# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

MICHAEL HILL,

                            Plaintiff,                    DECISION & ORDER

            -vs-                                          08-CV-6285-CJS

KATHLEEN WASHBURN, et al.,

                            Defendants.

_____

## APPEARANCES

For plaintiff:                          Michael Hill, *pro se*
                                        90-B-0732
                                        Southport Correctional Facility
                                        Box 2000
                                        Pine City, NY 14871-2000

For defendants:                         J. Richard Benitez, A.A.G.
                                        New York State Attorney General's Office
                                        144 Exchange Boulevard, Suite 200
                                        Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** Michael Hill, ("Plaintiff"), a prison inmate currently in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"),

brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against DOCCS

employees for alleged violations of his First Amendment constitutional rights in connection

with the way his mail correspondence was handled while he was incarcerated at Southport

Correctional Facility ("Southport"). At the time of the incidents alleged, Defendant Kathleen Washburn ("Washburn") was Southport's Mailroom Supervisor, Defendant Angela Bartlett ("Bartlett") was Deputy Supervisor of Programs, Defendant Sabrina VonHagn ("VonHagn") was Southport's Grievance Supervisor, and Defendant David Napoli ("Napoli") was Southport's Superintendent. ECF Nos. 1, 9.

In his amended complaint, ECF No. 9, Plaintiff alleges that Washburn tampered with, destroyed, or otherwise failed to deliver his mail, and that some of these actions were taken in retaliation for grievances that he had filed against her and other Defendants in this action. He further alleges that VonHagn, Napoli, and Bartlett knowingly acquiesced in Washburn's actions, failed to take corrective actions, or to protect his mail, and otherwise conspired with one another to prevent Plaintiff from pursuing his grievances and gaining access to the courts. Am. Compl., ¶¶ 26-47.

On March 24, 2009, Defendants moved to dismiss the amended complaint pursuant to Rule 12(c) on the grounds that: (1) Plaintiff's official capacity claims were barred by the Eleventh Amendment; (2) Plaintiff's substantive due process, retaliation, and conspiracy claims were conclusory; and (3) Plaintiff's amended complaint lacked allegations of personal involvement on behalf of certain defendants. ECF Nos. 11-13.

In a Decision and Order dated February 7, 2011, ECF No. 39, this Court granted Defendants' motion for judgment on the pleadings in part, dismissing Plaintiff's conspiracy and due process claims, dismissing all claims against Defendants in their official capacities, and dismissing all claims against Napoli for lack of personal involvement. The two remaining causes of action in the amended complaint allege First Amendment violations arising out of the Defendants' handling of Plaintiff's correspondence, *see* Am.

Compl. ¶¶ 26-36, and are the subject of the parties' competing motions for summary judgment. ECF Nos. 15 & 28.[1]

Also pending are Plaintiff's motion for default judgment, ECF No. 21, filed on October 22, 2010; Plaintiff's motion to attach exhibits to his motion for summary judgment, ECF No. 22, filed on October 25, 2010; and Defendants' motion for an extension of time to respond to Plaintiff's summary judgment motion pursuant to Rule 6(1)(B) of the Federal Rules of Civil Procedure, ECF No. 25, filed on November 29, 2010.

For the reasons that follow, Plaintiff's motion for summary judgment is denied, Defendants' motion for summary judgment is granted, and the amended complaint is dismissed in its entirety. In light of this disposition, Plaintiff's motion for default judgment is denied as moot, Defendants' motion for a Rule 6 extension is granted *nunc pro tunc*, and Plaintiff's motion to attach exhibits is granted.[2]

## BACKGROUND[3]

### *Attorney Correspondence*

In February, 2007, while incarcerated at Southport, Plaintiff submitted privileged correspondence to the facility's correspondence office addressed to Leigh Anderson, Esq., an attorney in Buffalo, New York. The correspondence was returned to Plaintiff with a notice that the envelope was incorrectly addressed per the 2007 edition of the New York

---

[1] Plaintiff was served with the notice required by *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412 (2d Cir. 2001). Cross Motion for Summary Judgment, Dec. 17, 2010, ECF No. 28.

[2] Those exhibits have been carefully reviewed and considered by the Court for purposes of this Decision and Order.

[3] The following facts are undisputed unless otherwise noted.

State Lawyer's Diary. Plaintiff filed a grievance concerning the handling of the Anderson correspondence, which the Inmate Grievance Review Committee ("IGRC") accepted in part and advised Plaintiff to update the address so that the mailroom staff could mail out his item. Plaintiff contends that the Anderson correspondence was opened and returned to him as "non-legal." Pl. Stmt., ECF No. 15, ¶ 4.

***The Word Station Correspondence***

On or about March 2, 2008, staff at Southport returned to the sender general mail addressed to Plaintiff from the "Word Station," a New Jersey company that provides typing and transcription services. The correspondence was a letter regarding payment for the typing of a manuscript, non-legal in nature, prepared by Plaintiff. The letter indicated that Plaintiff had previously attempted to pay for typing services with 201 postage stamps, a violation of DOCCS' policy. Plaintiff maintains that the mailroom staff at Southport erroneously marked and returned the Word Station correspondence as "non-approved vendor." Pl. Stmt., ¶ 16.

On March 28, 2008, Southport mailroom staff received Plaintiff's sealed correspondence addressed to the Word Station from Plaintiff dated March 27, 2008, in violation of DOCCS Directive 4422(III)((E)(4), which states that all business mail must be submitted unsealed and is subject to inspection. Mailroom employees opened Plaintiff's letter, which contained 100 postage stamps provided as payment for typing services by the Word Station. The letter referenced a total of over 300 postage stamps being sent for the Word Station's services. Defendant Washburn issued a misbehavior report on March 28, 2008, charging Plaintiff with smuggling, improper stamp possession, and correspondence violations. *See* 7 NYCRR § 270.2(14)-(15) & (26)(ii). Specifically, Washburn alleged that

4

Plaintiff had in his possession or had sent out over 300 stamps despite having purchased no stamps at the commissary and having no money in his inmate account. The misbehavior report also charged that Plaintiff was conspiring to violate correspondence rules by asking the Word Station to send his typed materials to his attorney's address.

Plaintiff admits to having sent the stamps as legal tender, but denies that he did not purchase them from the commissary, and also claims that his correspondence with the Word Station was "media mail," not subject to Directive 4422(III)((E)(4). Pl. Stmt. ¶ 18; Pl. Mem., ECF No. 15, at 14.

Plaintiff's violations were reported to Southport security, which in turn authorized a search of Plaintiff's cell on March 31, 2008, during which 11 additional stamps and other contraband were confiscated.

Shortly after the March 28, 2008, misbehavior report, Defendant Bartlett wrote to the Word Station, advising that inmates were not permitted to pay for services with stamps, and that the stamps Plaintiff sent to the Word Station would have to be returned to the facility in order for the Word Station to remain on DOCCS approved vendor list.

Following a disciplinary hearing on April 15, 2008, Plaintiff was found guilty of possessing excess stamps and violating correspondence procedures. He was sentenced to four months of confinement in the Special Housing Unit ("SHU"), which was suspended until December 4, 2008. The smuggling charge was dismissed.

*Pro Se Litigators Correspondence*

On March 12, 2008, staff at the Southport mailroom opened mail addressed to Plaintiff as general correspondence bearing a return address of "*Pro Se* Litigators." Because "*Pro Se* Litigators" was not an entity listed in DOCCS Directive 4421, § 721.2(a), which defines privileged correspondence as government, legal services, and medical services, mailroom staff treated the letter as general correspondence subject to opening and inspection. Plaintiff contends that the mail received from *Pro Se* Litigators was legal mail pertaining to a pending lawsuit in this Court, and that it was interfered with by Southport employees. Pl. Stmt. ¶¶ 7-8.

Per DOCCS Directives, a five-page limit of printed or photocopied materials applied to incoming mail. Because the contents of the *Pro Se* Litigators correspondence exceeded five pages, the balance of the mail was confiscated to either be returned to the sender at Plaintiff's expense or otherwise disposed of. *See* DOCCS Directive 4422(III)(G)(3)-(4). Plaintiff was told to use the Freedom of Information Law ("FOIL") process to obtain copies of the documents which were not delivered to him under Directive 4422. *See* New York Public Officers Law § 87 *et seq*.

On March 24, 2008, Plaintiff wrote to Superintendent Napoli and asked for permission to receive his manuscript and that the legal documents from *Pro Se* Litigators be given to him. Shortly thereafter, Defendant Bartlett wrote to Plaintiff, advising him that the manuscript was subject to the five-page limit described in Directive 4422 on incoming correspondence.

Plaintiff filed several grievances concerning the *Pro Se* Litigators correspondence, and requested an advance to send the confiscated material to *Pro Se* Litigators under Directive 4421, § 721.3(a)(3)(iv), which provides that an indigent inmate may make a request for an advance to pay for first class mail postage if the inmate has insufficient funds and certain conditions are met. Pursuant to Directive 4421, "[a]ny question whether a particular item qualifies as 'legal mail,' or whether an advance is allowable should be directed to [DOCCS' office of counsel.]" Directive 4421, § 721.3(a)(3)(vii).

Upon review by the IGRC and the Central Office Review Committee ("CORC"), Plaintiff was notified that, "[p]er Counsel's Office in Albany, *Pro Se* Litigators is not entitled to privileged correspondence status." Def. Ex. B, ECF No. 26-21. He was further advised of the five-page limit applicable to general correspondence, and that he could initiate a FOIL request to obtain the requested documents.

In addition, Plaintiff wrote to Superintendent Napoli alleging that Washburn was not sending his mail to *Pro Se* Litigators. Defendant Bartlett responded on June 24, 2008, stating that the material in question was mailed to *Pro Se* Litigators on May 29, 2008. He contends that because of Washburn's interference, he lost his legal representation by *Pro Se* Litigators resulting in the dismissal of one of his pending lawsuits in this Court and dismissal of certain claims in another pending lawsuit in this Court. Pl. Stmt. ¶ 16.

***Federal Court Proceedings***

On January 9, 2009, this Court issued a Decision and Order denying Plaintiff's summary judgment motion in an unrelated lawsuit brought under 42 U.S.C. § 1983**,** *see Hill v. Beall, et al.*, No. 06-CV-6568, and granting in part and denying in part the Defendants' cross-motion for summary judgment. ECF No. 50. Following a mistrial on Plaintiff's surviving claims in that complaint, the parties entered a stipulation of settlement and the Court dismissed the case on May 7, 2010. ECF No. 70.

Likewise, on February 25, 2009, this Court denied Plaintiff's habeas corpus petition brought pursuant to 28 U.S.C. § 2254 dismissing his claims on the merits. *See Hill v. West,* No. 04-CV-6601, ECF No. 42.

## DISCUSSION

***Motion for Extension of Time***

The Court must first address whether the late submission of Defendants' opposition to Plaintiff's motion for summary judgment beyond the time period allotted by the Court's scheduling order is proper. Fed.R.Civ.P. 6(b)(1)(B) provides: "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

The Supreme Court defines "excusable neglect" as "an elastic concept." *Pioneer Investment Svcs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 392 (1993). In deciding whether certain conduct constitutes excusable neglect a court must consider "all relevant circumstances surrounding the party's omission." *Silivanch v. Celebrity Cruises,*

*Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). Factors to consider include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and any potential impact it may have on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* Primary importance is placed on the third factor, namely the reason for the delay, including whether it was within the movant's control. The Second Circuit Court of Appeals has noted that rarely if ever will the equities favor a party who "fail[s] to follow the clear dictates of a court rule." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-251 (2d Cir. 1997).

On July 16, 2010, this Court ordered Defendants to respond to Plaintiff's summary judgment motion no later than August 20, 2010. ECF No. 19. The Court is mindful that more than three months elapsed between the July 16, 2010, scheduling order and November 29, 2010, when Defendants' Rule 6 motion was filed. However, Defendants' counsel cites that his failure to timely respond to Plaintiff's motion for summary judgment was, in part, due to the fact that he was hospitalized for five days during the month of August, did not return to work until August 12, 2010, and then only worked on a part-time basis. He further states that he was not aware that the Court's deadline had passed until Plaintiff filed his motion for default judgment in October, 2010, and another scheduling order was issued. Counsel's illness, combined with a state-wide hiring freeze at the Attorney General's Office resulting in the departure of two assistant attorneys without replacement and the re-assignment of over 50 cases, establishes that Defendants' oversight was not deliberate and willful, and appropriately falls under the purview of excusable neglect.

9

The Court now turns to the parties' dispositive motions.

### Summary Judgment Standard

The standard for granting summary judgment is well-established. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Where, as here, cross motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." *Natural Res. Def. Council v. Evans,* 254 F.Supp.2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Id.* (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). The Court notes that Defendants' Notice of Motion included the required notification for a Rule 56 motion. *See* W.D.N.Y. Loc. R. Civ. P. 56(b) (2011); Def.s' Cross Motion for Summary Judgment at 1–2, Dec. 17, 2010, ECF No. 28.

### *Retaliation*

Plaintiff first moves for summary judgment on his claim that the Defendants issued him four false misbehavior reports in retaliation for filing grievances against Washburn for allegedly interfering with his mail. Pl. Mem. at 9. In their cross-motion for summary judgment, Defendants urge dismissal of Plaintiff's retaliation cause of action on the ground that he fails to establish the requisite elements of a First Amendment retaliation claim. Def. Mem., ECF No. 32, at 7.

The Second Circuit has repeatedly cautioned that claims of retaliation are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds sub nom.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

In order to state a *prima facie* claim under § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected; (2) the defendants took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492. If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

In evaluating the third element of a retaliation claim, a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff. *Colon v. Coughlin*, 58 F.3d 865, 872-873 (2d Cir. 1995); *see also Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) ("where ... circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required").

The filing of formal prisoner grievances is protected conduct under the First Amendment. *Colon*, 58 F.3d at 872 (prison officials may not retaliate against prisoners for petitioning for redress of grievances); *see Smith v. Woods*, No. 03-CV-480, 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to oral complaints made to correctional officers), *aff'd*, 219 Fed. Appx. 110 (2d Cir. 2007). As such, Plaintiff's allegations that he was subjected to retaliatory conduct for filing mailroom staff misconduct grievances satisfy the first element of the retaliation claim. *See Ayers v. Roberts,* No. 05-CV-889, 2008 WL 2079921 (W.D.N.Y. May 15, 2008).

Assuming, *arguendo*, the issuance of the four misbehavior reports constitutes an adverse action for purposes of the *Mount Healthy* test,[4] Plaintiff nonetheless fails to establish the requisite causal connection between his filing of grievances and receiving misbehavior reports. The record shows that the circumstances surrounding the handling of Plaintiff's mail, his grievances, and the issuance of the misbehavior reports, do not demonstrate a retaliatory animus. Here, Defendant Washburn cannot be liable for filing a misbehavior report against Plaintiff because it is undisputed that Plaintiff repeatedly violated the rules of correspondence by, *inter alia*, attempting to pay for services with postage stamps on multiple occasions. While Plaintiff maintains that the stamps were legally purchased from the commissary and not obtained in violation of DOCCS' regulations, this is a factual issue immaterial to his retaliation claim, as Plaintiff plainly failed to comply with DOCCS' rules of conduct by being in possession of stamps in excess

---

[4] While it is true that the filing of a false misbehavior report can constitute an adverse action for purposes of retaliation analysis, *see Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004), Plaintiff fails to explain how the misbehavior reports were false, and the record indicates that Plaintiff was found guilty of the vast majority of the charges contained therein.

of $22.50 in value and was found guilty of that charge. *See* 7 NYCRR § 270.2(14)(vi). Further, his disregard for the correspondence regulations, which he had been repeatedly advised of, formed a legitimate basis for the misbehavior reports. A record of the misbehavior reports and related proceedings, *see* Pl. Ex. L, ECF No. 15, leaves little doubt that Plaintiff was guilty of the charges. The fact that Plaintiff was found not guilty of one smuggling charge and one soliciting charge does not weigh in his favor in light of his multiple infractions relating to the facility's correspondence rules.

A printout of Plaintiff's grievance history indicate that he filed grievances on March 13, 2008, April 2, 2008, April 9, 2009, April 11, 2008, May 20, 2008, and July 28, 2008. *See* Def. Ex. T. The allegedly retaliatory misbehavior reports were issued on March 28, 2008, June 24, 2008, July 22, 2008, and July 23, 2008. While the Court finds that the misbehavior reports were temporally proximate to the filing of Plaintiff's grievances, this alone does not raise a triable issue of fact, much less entitle Plaintiff to judgment as a matter of law. *See, e.g.*, *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 371 (S.D.N.Y. 2011) (evidence of a close temporal proximity, without more, is insufficient to raise a triable issue of fact on a retaliation claim).

While neither party has submitted evidence concerning Plaintiff's prior disciplinary history, there exist several letters in the record from DOCCS officials addressed to Plaintiff, wherein he is repeatedly advised of the correspondence procedures and is cautioned to abide by those procedures or face future disciplinary action. Def. Exs. I, L, N, R.

Because there is an independent factual and administrative basis for each action taken concerning Plaintiff's correspondence, the Court cannot conclude that there is a causal link between Plaintiff's grievances (constitutionally-protected speech) and the mis-

behavior reports (adverse action). In contrast, Plaintiff has offered nothing but conclusory statements that the misbehavior reports were improperly motivated. Pl. Mem. 10-11.

Plaintiff also asserts, in general terms, that defendant VonHagn retaliated against him by preventing his institutional grievances against the Defendants from reaching the CORC for appeal. Plaintiff's contention is without merit. The voluminous exhibits in this case submitted by both parties, which include Plaintiff's grievance complaints, administrative decisions relating to those complaints, an index of his complaints, inmate misbehavior reports, internal memoranda between Southport mailroom employees and DOCCS supervisors, as well as letters from the Defendants to Plaintiff, do not establish a set of undisputed facts warranting Plaintiff an award of judgment as a matter of law.

First, the record indicates that the CORC did receive and review two of Plaintiff's grievance appeals relating to his mail handling. Second, a letter from VonHagn to Plaintiff shows that she investigated his grievance history, and, upon review, did not find any appeals filed in two of Plaintiff's grievances, and advised him that the deadline to appeal had passed. Though Plaintiff requested permission to file a late appeal, VonHagn found that he did not present sufficient mitigating circumstances to warrant it. Pl. Ex. D-E. Plaintiff provides no circumstantial evidence for the Court to infer that VonHagn deliberately discarded Plaintiff's two CORC appeals with a retaliatory motive. Accordingly, Plaintiff fails to state a retaliation claim with respect to VonHagn.

For the reasons stated above, Plaintiff is not entitled to summary judgment on his retaliation claims, and Defendants' cross-motion for summary judgment on this cause of action is granted.

### *Interference with Legal/Privileged Correspondence*

Plaintiff next contends that Defendants Washburn and Bartlett interfered with his incoming and outgoing legal mail and that he was denied access to the courts to the extent that the mail allegedly interfered with was relevant to his pending federal court proceedings. Pl. Mem. at 12-14. In response, Defendants argue that Plaintiff fails to state a claim that he was denied access to the courts and that he does not establish a constitutional violation arising out of the handling of his non-legal mail. Def. Mem. at 4-6.

It is well-settled that prisoners do have a limited right to send and receive mail. *See Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006). In addition, legal mail is entitled to greater protection from interference than non-legal mail. *Davis*, 320 F.3d at 351; *accord Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) (citing *Davis*).

To state a claim for denial of access to the courts, however, "a plaintiff must allege that the defendant took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Davis*, 320 F.3d at 351 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)) (additional internal quotation marks omitted); *see also Nash v. McGinnis*, 585 F.Supp.2d 455, 463 (W.D.N.Y. 2008) ("to plead a claim for denial of the constitutional right of access to the courts, a plaintiff must allege actual injury, in the sense that he was prejudiced, by the defendants' actions, in the pursuit of some nonfrivolous claim") (quoting *Collins v. Goord*, 581 F.Supp.2d 563, 573 (S.D.N.Y. 2008)). In the instant case, Plaintiff has failed to present evidence demonstrating that he suffered any such prejudice as a result of Defendants' actions.

The Court has taken judicial notice of the proceedings Plaintiff alleges were affected by the Defendants' actions. Contrary to Plaintiff's contention, neither of those cases, *Hill v. Beall, et al.*, No. 06-CV-6568 (W.D.N.Y.) and *Hill v. West,* No. 04-CV-6601 (W.D.N.Y.) was dismissed as a result of the Defendants' delaying his outgoing mail or confiscating his incoming mail as alleged. In fact, Plaintiff's claim that he was denied access to the courts is belied by his own submissions, which include several pieces of correspondence from *Pro Se* Litigators evidencing that Plaintiff was in contact with that organization and that *Pro Se* Litigators provided advice regarding both Plaintiff's federal habeas corpus petition and § 1983 complaint. *See* Pl. Exs. F-G.

It appears then, that the crux of Plaintiff's claim is that he disagrees with DOCCS' characterization of his correspondence with *Pro Se* Litigators as non-legal. However, there is nothing in the record to suggest that DOCCS' determination in that regard was incorrect. DOCCS Directive 4421 § 721.2 defines legal services as "[a]ny attorney, approved legal representative, representative employed or supervised by an attorney, or any legal services organization." Two memoranda by DOCCS officials indicate that DOCCS Counsel's Office did not consider "*Pro Se* Litigators" to be a legal entity eligible for free legal postage. Pl. Ex. I, Def. Ex. F. Indeed, the letters in the record from *Pro Se* Litigators do not provide the name of an attorney, and lists only a post office box address in Lake Katrine, New York in lieu of letterhead. In addition, the signature blocks read, "Pro Se Litigators" typed out, without any accompanying signature. In sum, there is no reason to doubt DOCCS officials' finding that *Pro Se* Litigators is not an identifiable legal services provider. *See Maisano v. Morgel*, No. 07-CV-11364, 2008 WL 559550, at *9 (E.D. Mich. Feb. 27, 2008) ("The

17

determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court") (citing *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003)). Contrary to Plaintiff's belief, simply because the envelopes addressed to *Pro Se* Litigators were marked by him as "legal mail" does not necessarily mean that the correspondence will be treated as legal mail by DOCCS employees.

Finally, with respect to the Anderson correspondence, Plaintiff has not alleged that Defendants' handling of his outgoing mail impacted his ability to pursue a legal claim. Plaintiff fails to identify which pending lawsuit in this District was the subject of his correspondence to Leigh Anderson, nor is it discernable from Plaintiff's exhibits. As stated earlier, Plaintiff's § 1983 civil rights lawsuit ended in settlement, and his habeas corpus petition was denied on the merits. Plaintiff therefore cannot establish any injury resulting from the lone incident (wherein the mail in question was ultimately re-addressed and re-sent to Anderson), even if it were to assume that the Anderson letter was somehow related to either of those cases. Thus, to the extent that Plaintiff seeks to argue that Washburn's handling of this correspondence violated his right to access to the Courts, his allegations wholly fail to state a claim.[5]

---

[5] In any event, the record is clear that Plaintiff's letter to Anderson was returned to him opened pursuant to Directive 4422(III)(B)(11) & (22), because his letter contained an outdated office address for Ms. Anderson. *See* Def. Ex. A. DOCCS officials directed the mailroom staff at Southport to send out Plaintiff's mail when it was appropriately addressed. *Id.* However, even if the Court were to find that Defendants did not properly follow Directive 4421 (Privileged Correspondence), this alone is insufficient to establish a violation of one's constitutional rights. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."); *see also Cabassa v. Gummerson*, 01-CV-1039, 2008 WL 4416411, at *6 n. 24 (N.D.N.Y. Sept. 24, 2008) ("[T]he violation of a [DOCCS] Directive, alone, is not even a violation of a New York State Law or (continued...)

Likewise, there no basis here for a claim that Defendants violated Plaintiff's right to the free flow of mail. On this record, there is no indication of any invidious intent on Defendants' part; all that Defendants did was to require plaintiff's compliance with the relevant DOCCS regulations concerning incoming and outgoing mail, which cannot be said to constitute tampering for purposes of a constitutional claim. *See Nash*, 585 F.Supp.2d at 463.

Further, Plaintiff's allegation that his letters to the Word Station for typing services constituted "media mail" and was improperly opened by Southport mailroom staff relies on a misapprehension of the Directive. *See* Pl. Mem. at 14.[6] It is true that Directive 4422 provides that "[a]ll business mail, except business mail addressed to the media will be submitted by the offender unsealed. Such business mail is subject to inspection . . . . *All business mail addressed to the media may be submitted by the offender sealed*. Such business mail shall not be subject to opening, inspection, or confiscation, except in accordance with the provisions of Section III-B-7. . . ." Directive 4422 § III(E)(4-5) (emphasis added). However, his argument that communication to the Word Station requesting that a manuscript of his autobiography be typed in exchange for payment in postage stamps, should be properly characterized as mail addressed to a member of the media or a media outlet, is wholly unpersuasive. The Court determines that Southport employees properly opened and inspected the correspondence, which they treated as business mail.

_____

[5](...continued)
regulation (much less of 42 U.S.C. § 1983).").

[6] Plaintiff does not contend that the materials sent to the Word Station were legal in nature.

Finally, the fact that Plaintiff's mail to the Word Station was initially returned to him mistakenly marked "non-approved vendor" is immaterial to his claim, as his mail was handled pursuant to DOCCS Directives. The correspondence between Defendant Bartlett and Patricia Shannon, proprietor of the Word Station, clearly indicates that Washburn advised Shannon that inmates could not use stamps as currency, and that any organization that accepted stamps as currency could not remain on DOCCS' approved vendor list. Shannon responded, explaining that her misunderstanding regarding the matter stemmed from Plaintiff's repeated efforts to send stamps as payment for services, despite multiple warnings from DOCCS officials that he could not do so. *See* Def. Ex. E. Thus, Plaintiff fails to state a claim that he was denied access to the courts or that Defendants interfered with his free flow of mail.

Based on the foregoing analysis, the Court concludes that no reasonable jury could find in favor of Plaintiff on his First Amendment claims, and the Defendants are entitled to summary judgment as a matter of law dismissing Plaintiff's amended complaint.

## CONCLUSION

Plaintiff's motion for summary judgment, ECF No. 15, is denied. Defendants' motion for summary judgment, ECF No. 28, is granted, and the complaint is dismissed.

Further, Plaintiff's motion for default judgment, ECF No. 21, is denied as moot; Plaintiff's motion to attach exhibits to his motion for summary judgment, ECF No. 22, is granted; and the Defendants' motion for an extension of time to respond to Plaintiff's summary judgment motion pursuant to Rule 6(1)(B) of the Federal Rules of Civil Procedure, ECF No. 25, is granted *nunc pro tunc*.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from

this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:   January 11, 2013
         Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge